# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| JENNIFER R. PSAKI<br><br>    Movant,<br><br>v.<br><br>STATE OF MISSOURI ex rel. ERIC S. SCHMITT, Attorney General, et al.,<br><br>    Respondents. | Misc. Case No. 1:22-mc-28<br><br>Underlying Case No. 3:22-cv-01213-TAD-KDM (W.D. La..) |

### MEMORANDUM IN SUPPORT OF UNITED STATES' MOTION TO QUASH THIRD-PARTY SUBPOENA ISSUED TO JENNIFER PSAKI

## INTRODUCTION

Under Rules 26(c)(1) and 45(d)(3) of the Federal Rules of Civil Procedure, Defendants in the underlying action (collectively, for purposes of this miscellaneous action, "United States of America" or "Defendants" or "Federal Government"), move to quash a subpoena ordering former Assistant to the President and Press Secretary Jennifer Psaki to appear for a deposition on December 8, 2022 in this District. *See* Notice of Subpoena ("Psaki Subpoena"), attached hereto as Ex. A. In the action underlying this Rule 45 deposition subpoena dispute, the States of Missouri and Louisiana and four individuals seek injunctive relief based on a theory that the Federal Government purportedly violated the First Amendment by allegedly coercing various social-media companies to suppress the expression of certain viewpoints on their platforms, principally viewpoints related to COVID-19 and vaccination. Without first addressing Plaintiffs' standing or the merits of their claims, the Western Louisiana District Court ordered expedited discovery on Plaintiffs' motion for a preliminary injunction, and on October 21, 2022, that District Court granted Plaintiffs' motion to compel the depositions of several current and former Government officials. As relevant here, that court authorized Plaintiffs to direct a deposition subpoena to Ms. Psaki, a nonparty residing in this District.

Under well-established law barring depositions of high-ranking current or former Government officials, including Assistants to the President, absent "extraordinary circumstances," the challenged subpoena should be quashed. In compliance with the issuing District Court's expedited discovery order, Defendants conducted a reasonable search of Ms. Psaki's White House e-mail account and did not find any responsive communications regarding misinformation or content modulation (the subjects of the lawsuit) between Ms. Psaki and the social-media platforms whose content-moderation decisions are at issue in this case. Plaintiffs therefore cannot

demonstrate that Ms. Psaki has any personal knowledge of the conduct alleged in the operative complaint that is not available elsewhere. Plaintiffs already have relevant, non-privileged documents necessary to supplement their preliminary injunction motion and will receive additional information through the depositions of other witnesses (given that Defendants are currently challenging only some, but not all, of the eight depositions the issuing District Court authorized). Because Plaintiffs are thus unable to make the necessary showing of extraordinary circumstances, their demand for Ms. Psaki's deposition testimony cannot be reconciled with decades of precedent protecting high-ranking officials (both current and former) from compelled testimony in cases challenging Government conduct.

Accordingly, the proper course would be for this Court to quash the deposition subpoena directed to former White House Press Secretary Psaki.

## BACKGROUND

The States of Missouri and Louisiana commenced the underlying action against the Federal Government on May 5, 2022 in the Western District of Louisiana. Compl., ECF No. 1, *Missouri, et al. v. Biden, et al.*, No. 3:22-cv-1213 (W.D. La.).[1] The current, operative complaint (the Second Amended Complaint) renews a First Amendment claim nearly identical to claims unsuccessfully brought, since August 2021, by private parties in other courts—claims that, until now, were universally dismissed for lack of jurisdiction and failure to state a claim. *See Ass'n of Am. Physicians & Surgeons v. Schiff*, 518 F. Supp. 3d 505, 510 (D.D.C. 2021), *aff'd*, 23 F.4th 1028 (D.C. Cir. 2022); *Hart v. Facebook Inc.*, No. 22-CV-00737-CRB, 2022 WL 1427507 (N.D. Cal.

---

[1] Ms. Psaki served as White House Press Secretary from January 20, 2021, until May 13, 2022, when Ms. Karine Jean-Pierre became White House Press Secretary. The original complaint in the underlying action, filed on May 5, 2022, named Ms. Psaki as a defendant in her official capacity. When Ms. Psaki left the office of White House Press Secretary, she became a nonparty, and Ms. Jean-Pierre, her successor, automatically was substituted as a party. *See* Fed. R. Civ. P. 25(d).

May 5, 2022); *Changizi v. Dep't of Health & Hum. Servs.*, No. 2:22-CV-1776, 2022 WL 1423176 (S.D. Ohio May 5, 2022).

After those cases failed, Missouri and Louisiana repackaged the individuals' allegations into their own action against the Federal Government. In the underlying action, Plaintiffs allege that the Federal Government has coerced or colluded with various social-media platforms—including but not limited to Facebook and Twitter—to suppress categories of social-media speech that the Biden Administration allegedly disfavors. *See* Second Am. Compl., ECF No. 84. In particular, Plaintiffs allege that public statements and other conduct by various Federal Defendants have caused social-media companies to moderate certain speech that relates to COVID-19 and the U.S. elections and has been deemed "misinformation" under the social-media companies' user policies. *See id.*

In their original Complaint, the States named as Defendants the President, the White House Press Secretary, the Department of Health and Human Services (HHS) and several of its components and officials in their official capacities, and the Department of Homeland Security (DHS) and several of its components and officials in their official capacities. *Id.* The States have since amended their Complaint twice, adding individual social-media users as plaintiffs and several more agencies—including the Census Bureau, Federal Bureau of Investigation (FBI), the Department of State, among others—and Federal officials (named in their official capacities) as defendants. First Am. Compl., ECF No. 45; Second Am. Compl., ECF No. 84. No social-media companies are named in the action.

I.   **Plaintiff States' Preliminary Injunction Motion and Court-Authorized Expedited Discovery**

One month after filing the original Complaint, the States moved for a preliminary injunction, *see* Pls.' Mot. for Prelim. Inj., ECF No. 10, and for expedited discovery related to the

preliminary injunction motion, *see* Disc. Mot., ECF No. 17. The Court continued briefing on the preliminary-injunction motion pending resolution of the motion for expedited discovery. *See* Order, ECF No. 19.

The Government opposed the motion for expedited discovery for several reasons, including the contention that the District Court lacks subject-matter jurisdiction over the case because the Plaintiffs lack Article III standing. Opp'n to Mot. for Expedited Disc., ECF No. 26. As the Government explained in its opposition brief, it planned to file a motion to dismiss the case within a matter of days, where it would fully articulate the Article III defects in the Complaint—defects that, again, led multiple other courts to dismiss similar claims without discovery. *Id.* at 9. The Government filed the motion to dismiss on July 12, 2022. Mot. to Dismiss, ECF No. 35. After Plaintiffs filed their First Amended Complaint, the motion was withdrawn subject to refiling to address the new allegations. Notice of Withdrawal of Mot. to Dismiss, ECF No. 53. The Court later granted Plaintiffs leave to file a Second Amended Complaint, and the parties filed a status report proposing a schedule for briefing on a motion to dismiss. *See* Joint Status Report, ECF No. 105.

Also on July 12, 2022, hours before the Government filed its motion to dismiss, the Court granted the States' initial request for expedited discovery. Disc. Order, ECF No. 34. While emphasizing that "[e]xpedited discovery is not the norm" and should be allowed only "in limited circumstances," the Court authorized the States to serve written "discovery requests" that "are targeted to the specific allegations of [the] States' Complaint," in order to resolve the pending preliminary injunction motion. *Id.* at 9, 12. The Court authorized only written discovery and reserved the question "[w]hether depositions will be taken" for a "later" date. *Id.* at 12. The Court authorized discovery into the identities of Federal officials who communicated with social-media

platforms about misinformation or content modulation and the content and nature of such communications. *Id.* at 10.

Additionally, the Court set a schedule for completing expedited discovery and outlined procedures for resolving disputes over written discovery requests and any depositions the States might later wish to take. *Id.* at 13-14. The Order gave the Government 30 days to respond to the States' to-be-served interrogatories and requests for production (RFPs), and gave the parties 30 days to complete any depositions later authorized in the case. *Id.*

### II.   The Government Produces Substantial Written Discovery In Response To Plaintiffs' Requests But Locates No Responsive Communications Between Former White House Press Secretary Jennifer Psaki and Social-Media Platforms.

Despite the Court's authorization of "[t]argeted interrogatories and document requests," *id.* at 10, the States' discovery requests have been voluminous and far-reaching. On July 18, 2022, the States served ten sets of Interrogatories and eight sets of RFPs—totaling well over one hundred discovery requests—on a range of federal agencies and officers. *See* Joint Statement on Disc. Disputes, ECF No. 71, at 35. The Federal Government responded to interrogatories and produced roughly 15,000 pages of emails (and their attachments) between officials from the Federal Government and social-media platforms. *Id..* And after the Court permitted the States to obtain a limited amount of additional written discovery, *see* Order on Joint Statement, ECF No. 72, the Federal Government complied by serving amended interrogatory responses and producing additional documents on September 27, 2022.

Among the documents Plaintiffs sought through discovery were communications between officials from the White House Press Secretary's Office and officials from social-media platforms relating to misinformation and/or content modulation. *See* Defendant Karine Jean-Pierre's Amended Objections & Responses to Plaintiffs' RFPs at 9 (attached as Ex. B). These requests

covered Jennifer Psaki in her official capacity as former White House Press Secretary. After conducting a reasonable search, however, Defendants did not identify responsive documents. *See id.* at 11; *see also* Excerpts of Defendants' Corrected Amended Combined Objections & Responses to Plaintiffs' First Set of Expedited Preliminary-Injunction Related Interrogatories (attached as Ex. C) at 20 (identifying Ms. Psaki as one of the custodians whose emails were searched and reviewed).[2] That is, Defendants located no emails between Ms. Psaki and any official at a social-media company concerning misinformation.

The States also served interrogatories on the White House Press Secretary's Office. *See* Ex. C. Through the Interrogatories, the States asked the Press Secretary's Office to explain Ms. Psaki's public statements in press briefings during July 2021 and April 2022, during which she was asked about the Administration's actions with respect to the spread of misinformation on social-media platforms, among other things. *Id.* at 74-87. In response, Defendants provided portions of the publicly available transcripts of the press briefings that provided the full context for Ms. Psaki's comments. *Id.* In addition, Defendants provided other substantive responses such as it being "the understanding of the White House Office of the Press Secretary (the "Office") that, in referring to individuals who 'engaged with them [i.e., social-media platforms],' Ms. Psaki was not referring to employees of the Office." *Id.* at 84. Thus, as indicated in their discovery responses, Defendants did not uncover evidence of any communications—oral or written—between Ms. Psaki and officials from social-media platforms about misinformation. Nor did Defendants uncover evidence that Ms. Psaki has first-hand knowledge of any such communications.

---

[2] The document was originally marked confidential due to the disclosure of certain names pertaining to agency defendants or social media platforms, but those names are redacted in the attached version. None of those redactions are pertinent to the issues discussed in this motion related to Ms. Psaki.

### III. The Western Louisiana District Court Authorizes Plaintiffs To Seek Depositions of Eight Current And Former Federal Officials, Including Former White House Press Secretary Jennifer Psaki.

On October 7, 2022, the States notified Defendants of depositions they wished to take, after which the parties then had ten days to meet and confer on any disputes over any depositions sought. Disc. Order, at 14. On October 14, the parties filed a joint statement addressing the scope of depositions the Plaintiffs sought. *See* Joint Statement Regarding Witness Dep., ECF No. 86 ("Joint Statement"). The States sought to take depositions of ten current and former federal officials, including many who are high-ranking. *Id.* They identified Ms. Psaki as one of the ten individuals they wish to depose. In their section of the Joint Statement, Defendants objected to Plaintiffs' efforts to depose Ms. Psaki on several grounds. *See id.* at 44-45, 48-55.

Defendants first objected to Ms. Psaki's deposition on the grounds that Plaintiffs could not demonstrate exceptional circumstances warranting the deposition of such a high-ranking Government official. *See id.* at 49-53 (addressing high standard for deposing high-ranking Government officials); *id.* at 53-54 (applying that standard to Ms. Psaki, former Assistant to the President and White House Press Secretary). Defendants underscored that they had conducted a reasonable search of Ms. Psaki's e-mails "and did not find responsive documents." *See id.* at 54.

Defendants further noted that Plaintiffs' efforts to depose specific former officials raised particular concerns that made "litigation over a motion to quash especially likely." *See id.* at 61; *see also* at 60 (underscoring that "[i]t is foreseeable that authorizing Rule 45 depositions may cause the parties to be consumed in collateral litigation, including in another court, over motions to quash—all while completing depositions of current parties within the 30-day time period set by the expedited discovery schedule"). In addition to the interest of those individuals in avoiding harassment, *id.*, Defendants also raised the Government's interest in preventing the extraordinary

depositions of high-ranking officials such as Ms. Psaki absent exceptional circumstances. *Id.* (noting that objecting on those grounds would be "another basis for a motion to quash").

On October 21, the Western Louisiana District Court authorized eight depositions, including the deposition of Jennifer Psaki. *See* Dep. Order, ECF No. 90. Many of the authorized deponents were, like Ms. Psaki, current or former high-ranking government officials. *See id.* (authorizing the depositions of Deputy Assistant to the President and Director of White House Digital Strategy, Robert Flaherty; Director of the Cybersecurity and Infrastructure Security Agency (CISA), Jen Easterly; the Surgeon General, Vivek Murthy; and the Director of the National Institute of Allergy and Infectious Diseases, Dr. Anthony Fauci; among others). In authorizing the depositions of former high-ranking officials, the Court stated it has "already taken into consideration the burden of the deponent[s]" but had no accompanying analysis for that assertion. *See id.* at 5. [3]

Indeed, in analyzing Defendants' objections to Ms. Psaki's deposition as a high-ranking official, the Court remarked that it "considered that Psaki was a high-ranking official at the time that she made the statements at issue, especially as she served as the White House Press Secretary," but, nevertheless authorized her deposition. *See id* at 17. The Court opined that Ms. Psaki "has personal knowledge," *id.*, without acknowledging Defendants' discovery responses, containing Defendants' uncontroverted representation that they found no responsive documents (namely, communications between Ms. Psaki and social-media platforms about misinformation, the subject-matter of the lawsuit). Further, the district court did not assess whether there were alternative

---

[3] Besides Ms. Psaki, the Court also authorized the deposition of another former senior White House official, Andrew Slavitt, but gave Plaintiffs the choice of deposing Mr. Slavitt or a current White House official, Robert Flaherty. Plaintiffs elected to depose Mr. Flaherty and accordingly Ms. Psaki is the only former official currently subject to deposition.

sources for Plaintiffs to obtain the information they sought from Ms. Psaki. *Id*. at 17-18. Rather, the Court simply stated that "there are substantive reasons for taking the deposition." *Id*. at 18.

The Western Louisiana District Court recognized Defendants' anticipated motion to quash any subpoena seeking Ms. Psaki's deposition. *See id*. at 5. Further, it noted that "an extension" to the Court's 30-day period for conducting depositions "may be warranted" in order for the processes pursuant to Rule 45 of the Federal Rules of Civil Procedure to play out. *Id*. The Court later granted an extension to December 9, 2022, for Plaintiffs to take any authorized depositions. *See* Order, ECF No. 99.

### IV. The Government Is Seeking Mandamus Relief From The Western Louisiana District Court's Order As To Certain Depositions.

On October 28, 2022, the Government filed a petition for mandamus with the Court of Appeals for the Fifth Circuit Court, seeking relief from the Western Louisiana District Court's authorization of the depositions of three current officials: Deputy Assistant to the President and Director of White House Digital Strategy, Rob Flaherty; Directory of CISA, Jen Easterly; and the Surgeon General, Vivek Murthy. The Government also moved the Western Louisiana District Court to stay the depositions of those officials pending resolution of the mandamus petition. *See* Defendants' Corrected Motion for Partial Stay of October 21, 2022 Order Pending Petition for Writ of Mandamus, ECF No. 92. The district court denied the stay request. *See* Mem. Order, ECF No. 104.

The Government's mandamus petition argued that it was a clear abuse of discretion for the Western Louisiana District Court to authorize the depositions of these three high-ranking officials without any analysis as to the presence of exceptional circumstances warranting those officials' depositions. *See In re Murthy, Easterly, Flaherty*, No. 22-30697 (5th Cir. October 28, 2022). In particular, the petition explained that the district court did not adhere to the governing legal

standards requiring a showing that a high-ranking official has first-hand knowledge that is unobtainable from other sources and that "exceptional circumstances" warrant the officials' deposition notwithstanding the burdens imposed. *Id. see also In re Bryant*, 745 F. App'x 215, 220 (5th Cir. 2018) (per curiam), *as revised* (Nov. 30, 2018) (unpublished) (quoting *In re F.D.I.C.*, 58 F.3d 1055, 1060 (5th Cir. 1995)); *In re Stone*, 986 F.2d 898, 905 (5th Cir. 1993) (per curiam). The Government's mandamus petition does not seek relief regarding Ms. Psaki's deposition. Rather, consistent with Rule 45, Ms. Psaki is subject to subpoena in the Eastern District of Virginia as a former government official and, as explained herein, Ms. Psaki's deposition should likewise be quashed by this Court.

Pursuant to Local Rule 37(E), counsel for the parties met and conferred telephonically on October 27, 2022 in a good faith effort to resolve this dispute, but were unable to do so. Plaintiffs oppose this motion.

## LEGAL STANDARD

Federal Rule of Civil Procedure 45 governs subpoenas issued to non-parties. *See* Fed. R. Civ. P. 45. Under Rule 45, the Court "must quash or modify a subpoena that . . . subjects a person to undue burden," or that "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A). Because the scope of discovery under Rule 45 tracks Rule 26, standards for discovery under both rules govern a motion to quash. *See Singletary v. Sterling Transport Co.*, 289 F.R.D. 237, 240–41 (E.D. Va. 2012). Rule 26 grants broad discretion to make any order which justice requires "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including to forbid the proposed discovery altogether. Fed. R. Civ. P. 26(c)(1); *see also Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). Under Rule 26(b)(2), in particular, the court "must limit the frequency or

extent of discovery . . . if it determines that . . . the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." { TA \l "Fed. R. Civ. P. 26(b)(2)(C)" \s "dabmci_10be2b7ac1c7459ca7f13f34ff829201_1" \c 9 }Fed. R. Civ. P. 26(b)(2)(C). Rule 45, however, expands on Rule 26 by also taking into account the interest of non-parties. *See Watts v. SEC*, 482 F.3d 501, 509 (D.C. Cir. 2007) (opinion for the Court by Kavanaugh, J.) (Rule 45 "requires district courts supervising discovery to be generally sensitive to the costs imposed on third parties").

Although the party moving to quash ordinarily bears the burden of persuasion, *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019), where, as discussed below, the subpoena is issued to a high-ranking Government official, courts require the party seeking to depose the official to demonstrate that "extraordinary circumstances" justify the deposition, *see In re McCarthy*, 636 F. App'x 142, 143 (4th Cir. 2015); *Intelligent Verification Sys., LLC v. Microsoft Corp.*, No. 2:12-cv-525, 2014 WL 12544827, at \*2 (E.D. Va. Jan. 9, 2014).

## ARGUMENT

### I.    Current and Former High-Ranking Government Officials Are Protected from Depositions Absent Extraordinary Circumstances

"It is well established that high-ranking government officials may not be deposed or called to testify about their reasons for taking official actions absent 'extraordinary circumstances.'" *McCarthy*, 636 F. App'x at 143 (citing, *inter alia*, *Franklin Sav. Ass'n v. Ryan*, 922 F.2d 209, 211 (4th Cir. 1991), and *Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 586 (D.C. Cir. 1985) (in turn citing *United States v. Morgan*, 313 U.S. 409, 422 (1941) (*Morgan II*))).

In *Morgan II*, the Supreme Court countermanded a district court order permitting the deposition of the Secretary of Agriculture, admonishing that he "should never have been subjected

to this examination" because it was improper "to probe [his] mental processes." 313 U.S. at 422. As the Supreme Court and lower courts applying *Morgan II* and its predecessor, *Morgan v. United States*, 304 U.S. 1 (1938) (*Morgan I*), have emphasized, compelling the testimony of high-ranking government officials is justified only in "extraordinary instances." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268 (1977).

Consistent with *Morgan*, the Fourth Circuit and other circuits have issued writs of mandamus to preclude the depositions of high-ranking Executive branch officials. *See, e.g.*, *In re McCarthy*, 636 F. App'x at 145 (Environmental Protection Agency (EPA) Administrator); *In re Commodity Future Trading Comm'n*, 941 F.3d 869, 874 (7th Cir. 2019) (Commodity Futures Trading Commission chairman, commissioners, and staff); *In re Cheney*, 544 F.3d 311, 314 (D.C. Cir. 2008) (Vice President's Chief of Staff); *In re United States ("Holder")*, 197 F.3d 310, 316 (8th Cir. 1999) (Attorney General and Deputy Attorney General); *In re F.D.I.C.*, 58 F.3d at 1063 (members of the Board of Directors of the Federal Deposit Insurance Corporation); *In re United States ("Kessler")*, 985 F.2d 510, 513 (11th Cir. 1993) (per curiam) (Food and Drug Administration Commissioner).

And numerous courts have similarly precluded depositions of former high-ranking officials regarding their conduct while in office. *See, e.g.*, *In re U.S. Dep't of Educ.*, 25 F.4th 692, 695 (9th Cir. 2022) (granting the "[f]ormer United States Secretary of Education Elisabeth DeVos, as well as the U.S. Department of Education (Department), and the current Secretary of Education" mandamus petition to quash former Secretary DeVos's deposition); *see also Lederman v. N.Y.C. Dep't of Parks & Recreation*, 731 F.3d 199, 203–04 (2d Cir. 2013) (former deputy mayor); *Raymond v. City of N.Y.*, No. 15-cv-6885, 2020 WL 1067482, at *4 (S.D.N.Y. Mar. 5, 2020) (former police commissioners); *Fed. Deposit Ins. Corp. (FDIC) v. Galan-Alvarez*, No. 1:15-mc-

00752, 2015 WL 5602342, at *4-5 (D.D.C. Sept. 4, 2015) (former FDIC chairperson and senior deputy director); *United States v. Sensient Colors, Inc.*, 649 F. Supp. 2d 309, 316–18 (D.N.J. 2009) (former EPA Administrator); *Croddy v. FBI*, No. 00-cv-0651, 2005 WL 8168910, at *1 (D.D.C. Mar. 30, 2005) (former FBI director); *United States v. Wal-Mart Stores, Inc.*, No. 01-CV-1521, 2002 WL 562301, at *3–4 (D. Md. Mar. 29, 2002) (former Consumer Product Safety Commission chair). Three separate rationales underlie these protections.

*First*, orders compelling current and former high-ranking officials to testify about their official conduct raise significant "separation of powers concerns." *In re United States (Jackson)*, 624 F.3d 1368, 1372–73 (11th Cir. 2010); *see Arlington Heights*, 429 U.S. at 268 & n.18 ("[J]udicial inquiries into . . . executive motivation represent a substantial intrusion into the workings of other branches of government."). As *Morgan II* emphasized, administrative decisionmaking and judicial processes are "collaborative instrumentalities of justice and the appropriate independence of each should be respected by the other." 313 U.S. at 422. "Just as a judge cannot be subjected to such a scrutiny, so the integrity of the administrative process must be equally respected." *Id.* (citation omitted). For similar reasons, absent "a strong showing of bad faith or improper behavior," discovery into "the mental processes of administrative decisionmakers" is unwarranted. *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2573–74 (2019) (citation omitted).

*Second*, subjecting high-level Government officials to depositions in civil actions involving their official conduct would impede the exercise of their duties by exerting a chilling effect on official decision-making. *See Lederman*, 731 F.3d at 203. That is, "subjecting officials to interrogation about how they reached particular decisions would impair that decision-making process by making officials less willing to explore and discuss all available options, no matter how

controversial." *Walker v. NCNB Nat'l Bank of Fla.*, 810 F. Supp. 11, 12 (D.D.C. 1993); *see also Sykes v. Brown*, 90 F.R.D. 77, 78 (E.D. Pa. 1981) ("Should the agency head be subject to deposition in every resulting case and be repeatedly required to explain the various mental steps he took to reach his decision, the decision may be his last."). Indeed, here, Plaintiffs would like to depose Ms. Psaki on her central job duties as White House Press Secretary, that is, the potentially privileged internal deliberations about what to say in a public press briefing.

*Third*, "a contrary rule might discourage otherwise upstanding individuals from public service." *Galan-Alvarez*, 2015 WL 5602342, at *4 (citation omitted). As multiple courts have recognized, absent limits on the depositions of high-ranking officials, there is "a tremendous potential for abuse or harassment." *K.C.R. v. Cty. of Los Angeles*, No. CV 13-3806, 2014 WL 3434257, at *3 (C.D. Cal. July 11, 2014) (citation omitted); *see In re Stone*, 986 F.2d at 904; *Wal-Mart*, 2002 WL 562301, at *4; *Asberry v. Sch. Bd. of Pasco Cnty., Fla.*, No. 18-cv-2222, 2019 WL 12383128, at *1 (M.D. Fla. Aug. 20, 2019).

The White House Press Secretary, as an Assistant to the President, qualifies as a high-ranking official whose deposition should be barred absent extraordinary circumstances. *See Alexander v. FBI*, 186 F.R.D. 1, 3–4 (D.D.C. 1998) (concluding that White House Press Secretary was high-ranking official, along with other officials classified as "Assistant[s] to the President," considering "the nature of their positions at the White House"). "Although no standard has been established for determining if an official is high-ranking," *Byrd v. District of Columbia*, 259 F.R.D. 1, 6 (D.D.C. 2009), courts determine "on a case-by-case basis," *Sensient Colors,*, 649 F. Supp. 2d at 321, whether an individual qualifies as a high-ranking official by considering, for example, the individual's title, place in the governmental hierarchy, and job responsibilities. *See, e.g.*, *Low v. Whitman*, 207 F.R.D. 9, 12 (D.D.C. 2002) (EPA Deputy Chief of Staff is high-ranking official,

where, "[a]s a member of the Senior Executive Service with responsibility for budget, personnel, and resource issues," "position" was "of substantial authority"); *see also Sensient Colors*, 649 F. Supp. 2d at 321 (*Morgan* doctrine applied to EPA Regional Administrator for Region 2, who "reports directly to the EPA Administrator, who in turn reports directly to the President of the United States"); *Church of Scientology of Bos. v. IRS*, 138 F.R.D. 9, 12 (D. Mass. 1990) (*Morgan* doctrine applied to director of Exempt Organizations Technical Division, National Office of the Internal Revenue Service).

The fact that Ms. Psaki no longer holds the position of White House Press Secretary does not alter the analysis. Courts have recognized that the *Morgan* doctrine "is no less applicable to former officials than to current officials," even though any immediate "interference with official duties is absent." *Galan-Alvarez*, 2015 WL 5602342, at *4 (quoting *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1049 (E.D. Cal. 2010)); *see also Wal-Mart*, 2002 WL 562301, at *3–4. There is no serious question under the precedents of the Fourth Circuit or of any other circuit that Ms. Psaki was protected by the *Morgan* doctrine from unwarranted deposition while she was still the White House Press Secretary. *See supra* at 10–11 (collecting cases). The happenstance that she has stepped down from that position does not change the outcome. *In re United States*, 542 F. App'x 944, 949 (Fed. Cir. 2013) ("[T]he process-inquiry rationale [for prohibiting depositions of high-ranking officials except under exceptional circumstances] hardly becomes inapplicable upon an official's departure from his office[.]"), *accord In re U.S. Dep't of Educ.*, 25 F.4th at 705; *Galan-Alvarez*, 2015 WL 5602342, at *4 ("'indiscriminate depositions of high-ranking government officials would . . . likely discourage' people 'from accepting positions as public servants' irrespective of whether those deposed were current or former officials" (quoting *Wal-Mart*, 2002 WL 562301, at *3)). The concerns underlying the *Morgan* doctrine remain even after a high-

ranking official leaves office: If the *Morgan* doctrine "is to have any meaning, the protections must continue upon the official's departure from public service." *Wal-Mart*, 2002 WL 562301, at *3.

## II. The High-Ranking Deposition Sought Is Especially Inappropriate Here Given The Special Separation of Powers Concerns Raised By Seeking Deposition Testimony From A Former High-Ranking White House Official.

The rule in the Fourth Circuit is that absent "'extraordinary circumstances,' a government decision-maker will not be compelled to testify about his mental processes in reaching a decision, 'including the manner and extent of his study of the record and his consultations with subordinates.'" *Franklin Sav. Ass'n*, 922 F.2d at 211 (quoting *Morgan II*, 313 U.S. at 421–22). That rule warrants especially strong adherence in this case, because the Plaintiffs seek to question a former White House official who functioned as a close advisor to the President. The separation-of-powers concerns raised by an attempt to depose such an official demand that the parties seeking the deposition make an especially compelling demonstration of extraordinary need for the testimony sought.

Discovery directed to the White House triggers especially weighty separation-of-powers concerns. *Cheney v. U.S. Dist. Ct for the Dist. of Columbia*, 542 U.S. 367, 383 (2004). District "courts must narrow overly broad and intrusive discovery requests directed at the highest levels of the Executive Branch, lest 'vexatious litigation . . . distract [the Executive Branch] from the energetic performance of its constitutional duties.'" *Vidal v. Duke*, No. 16-cv-4756, 2017 WL 8773110, at *4 (E.D.N.Y. Oct. 17, 2017) (alterations in original) (citing *Cheney*, 542 U.S. at 382) (finding magistrate judge order "requiring the White House to identify and assert privilege . . . to specific documents or risk waiving privilege over those documents . . . potentially raises constitutional concerns akin to those at issue in *Cheney*").

In *Cheney*, the Supreme Court held that mandamus relief was available to vacate orders authorizing wide-ranging discovery against the Vice President and others, explaining that "special considerations control" when discovery is directed to senior White House officials. 542 U.S. at 385. In so deciding, *Cheney* followed a long line of authority protecting the confidentiality of presidential communications and emphasizing the requirement for a "focused demonstration of need," *In re Sealed Case*, 121 F.3d 729, 746 (D.C. Cir. 1997); *see generally id.* at 738-40 (reviewing history of presidential communications privilege). *Cheney* held that it is impermissible for a civil litigant to propound broad-based and wide-ranging discovery requests and then require "the Executive Branch to bear the onus of critiquing the unacceptable discovery requests line by line." 542 U.S. at 388. Any such "onus" is even heavier for a deposition, in which each question of a current or former White House official may elicit a response that implicates or is covered by the presidential communications privilege. If permitted to proceed, the deposition of Ms. Psaki would inevitably set the Executive and Judicial Branches "on a collision course" through adjudications of executive privilege, thrusting the court into "the awkward position of evaluating the Executive's claims of confidentiality and autonomy," and "difficult questions of separation of powers and checks and balances" would quickly be pushed to the fore. *Cheney*, 542 U.S. at 389. *Cheney*'s admonition that there is "no support for the proposition that the Executive Branch 'shall bear the burden' of invoking executive privilege" before absolutely necessary, *id.* at 388 (citation omitted), undoubtedly applies to deposition Plaintiffs seek here.

### III. Plaintiffs Cannot Establish that Extraordinary Circumstances Require the Former White House Press Secretary's Deposition.

No "extraordinary circumstances" warrant an expedited deposition of Ms. Psaki concerning the conduct of her official duties as a high-ranking White House official.

First, Plaintiffs have failed to show that Ms. Psaki is likely to provide any testimony relevant to their First Amendment claim. Plaintiffs' claim is that the Federal Government is responsible for certain content-moderation decisions by social-media companies, a claim that would at a minimum require Plaintiffs to show that Federal officials "exercised coercive power or has provided such significant encouragement . . . that the [private conduct at issue] must in law be deemed to be that of the" Government. *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). But Plaintiffs have not identified any evidence showing or even suggesting that Ms. Psaki ever communicated with any social-media company in her capacity as Press Secretary about misinformation, much less that she "exercised coercive power" to compel a social-media company to take any action. *Id.* Again, Defendants' discovery searches uncovered no evidence of communications between Ms. Psaki and social-media platforms concerning the removal of misinformation and/or content modulation.

Plaintiffs instead have pointed only to certain innocuous comments that Ms. Psaki made during press briefings about communications that *other* Government officials had with social-media companies. *See* Joint Statement, ECF No. 86, at 15-18. As an initial matter, any limited, second-hand knowledge Ms. Psaki may have concerning communications between other Government officials and social-media companies would not justify the extraordinary deposition Plaintiffs seek here: an expedited deposition of a senior White House official concerning her official acts. *See Blankenship v. Fox News Network, LLC*, No. 2:19-CV-00236, 2020 WL 7234270, at *6 (S.D.W. Va. Dec. 8, 2020) ("Courts decline to force high-ranking government officials to testify even in the face of press reports that describe conduct relevant to the violations alleged in the case."). Indeed, if limited, second-hand knowledge of that type were sufficient, current and former White House Press Secretaries would be subject to depositions in virtually any case

concerning actions taken (or allegedly taken) by the Government. After all, it is the Press Secretary's function to receive information from other Government officials about activities across various federal agencies, and to then describe those activities to the news media during press conferences. Those underlying activities may very well be the subject of litigation, but that cannot mean that the Press Secretary, by virtue of receiving second-hand information about them to communicate about such activities with the public, should be deposed in any such litigation.

Instead of offering any evidence of personal knowledge, Plaintiffs speculate about what Ms. Psaki may have known based on her official remarks in the Press Secretary role. *See* Joint Statement, ECF No. 86, at 15-18. But such speculation of course is insufficient to show unique personal knowledge. *See Galan-Alvarez*, 2015 WL 5602342, at *5 (generalized assertions that FDIC Chairperson "may have attended meetings and requested briefings and documents on Project Themis due to her leadership role" failed to "demonstrate that any knowledge she gained of the project was unique").

Second, Plaintiffs fail to show that any knowledge Ms. Psaki may have concerning communications that other Government officials had with social-media companies is likely to be relevant to their claim—let alone that such knowledge is sufficiently important to their case to constitute extraordinary circumstances justifying her deposition.

Again, Plaintiffs rely on certain general statements that Ms. Psaki made about routine communications between public and private actors, none of which involved any coercion. *See* Joint Statement, ECF No. 86, at 15-18. For example, during one press briefing, Ms. Psaki stated that certain government officials are "in regular touch with social media platforms . . . about areas where [the Administration has] concern" and that the discussions are aimed at "better understand[ing] the enforcement of social media platform policies." Press Briefing by Press

19

Secretary Jen Psaki, https://www.whitehouse.gov/briefing-room/press-briefings/2021/07/16/press-briefing-by-press-secretary-jen-psaki-july-16-2021 (July 16, 2021) (hereinafter, "7-16 Press Briefing"); *see also* Press Briefing by Press Secretary Jen Psaki and Surgeon General Dr. Vivek H. Murthy, https://www.whitehouse.gov/briefing-room/press-briefings/2021/07/15/press-briefing-by-press-secretary-jen-psaki-and-surgeon-general-dr-vivek-h-murthy-july-15-2021 (July 15, 2021) (hereinafter, "7-15 Press Briefing"). Ms. Psaki later reiterated, in general terms, that certain government officials "engage regularly with all social media platforms about steps that can be taken." Press Briefing by Press Secretary Jen Psaki, https://www.whitehouse.gov/briefing-room/press-briefings/2022/04/25/press-briefing-by-press-secretary-jen-psaki-april-25-2022/ (Apr. 25, 2022).

But Ms. Psaki nowhere suggested that those officials *pressured* social-media platforms to take any particular action against any particular users or content. To the contrary, Ms. Psaki stated that "Facebook and any private-sector company" ultimately "makes decisions about what information should be *on their platform*." 7-16 Press Briefing (emphasis added); *see also id.* ("They're . . . private-sector compan[ies]. They're going to make decisions about additional steps they can take."). She further explained:

> [T]o be crystal clear: Any decision about platform usage and who should be on the platform is orchestrated and determined by private-sector companies. Facebook is one of them . . . [a]nd there are a range of media who are—also have their own criteria and rules in place, and they implement them. And that's their decision to do. That is not the federal government doing that.

7-16 Press Briefing. Plaintiffs thus offered no basis for inferring that Ms. Psaki is likely to have relevant information concerning alleged Government *coercion* of social-media companies (even if bare relevance sufficed in this context, which it cannot). And they fail to demonstrate that she personally had any relevant communications with social-media companies in her capacity as Press

Secretary, or that she has any specific knowledge of relevant communications by other Government officials.

In its order authorizing Plaintiffs to pursue a deposition of Ms. Psaki, the Western Louisiana District Court concluded that Ms. Psaki has "personal knowledge of the participation of high-level White House officials in pressuring social-media platforms, and . . . reinforced the public threats of adverse legal consequences to social-media platforms if they do not increase censorship of views disfavored by federal officials." Dep. Order at 16. But that assertion accepted at face value Plaintiffs' glaring mischaracterizations of Ms. Psaki's statements during the relevant press briefings described above. Neither Plaintiffs nor the Western Louisiana District Court quoted from or cited to a single portion of those press briefings in which Ms. Psaki stated, or even suggested, that any Government officials pressured social-media companies to do anything, or issued any threats of adverse legal consequences to social-media companies if they did not increase censorship of viewpoints those officials disfavored.[4] Accordingly, Plaintiffs fail to show that Ms. Psaki is likely to have any first-hand (or even second-hand knowledge) relevant to their claims.

But even if Plaintiffs could show that Ms. Psaki is likely to possess relevant knowledge, they must, but fail to, show that she possesses *unique* knowledge, unavailable elsewhere, such that an expedited deposition of Ms. Psaki is *necessary* for them to litigate their preliminary injunction motion. *See Blankenship*, 2020 WL 7234270, at *6 ("exceptional circumstances" are not present if "the deposition [is not] '*essential to* [the plaintiff's] case'") (emphasis added) (citations omitted).

---

[4] At times, the Western Louisiana District Court's Order misquotes Ms. Psaki. For example, the Court, quoting from the July 15, 2021 press conference, states: "Psaki also 'demanded' 'robust strategies' for social-media companies to enforce censorship of 'harmful posts.'" Order at 17. Ms. Psaki, to the contrary, stated only that government officials "have *recommended — proposed* that" those companies "create a robust enforcement strategy" and that it is "important to take faster action against harmful posts." 7-15 Press Briefing (emphasis added).

Thus far, Defendants have produced roughly 15,000 pages of documents to Plaintiffs, and currently must produce seven other witnesses—excluding Ms. Psaki—for expedited depositions.[5] Plaintiffs do not suggest that the wealth of discovery they have already received, and will continue to receive, is insufficient. Indeed, they have not even identified a single piece of unique information that Ms. Psaki may provide that Plaintiffs could not secure elsewhere. *See id.* at \*6 ("[H]igh-ranking government officials 'are generally entitled to limited immunity from being deposed concerning matters about which they have no unique personal knowledge.'" (citation omitted)).

Any notion that Ms. Psaki's testimony is "essential" to Plaintiffs' case is properly rejected, moreover, considering the alternative, and substantially more direct, sources of testimony that are available. Plaintiffs can obtain discovery from the social media platforms themselves. To the extent government officials had communications with those platforms, that information plainly can be obtained from the platforms themselves. This is basis alone to quash the deposition of Ms. Psaki. Indeed, to the extent Plaintiffs seek to depose Ms. Psaki about any communications that she had with the President (or other Government officials) for the purpose of offering or preparing advice to the President, or about Government deliberations or decision-making concerning misinformation or content moderation on social-media platforms, such inquiries should be prohibited because that information would be clearly privileged under the Presidential Communications and Deliberative Process Privileges, respectively. *See* Fed. R. Civ. P. 45(d)(3)(A)(iii); *see also In re Sealed Case*, 121 F.3d 729 (presidential communications and deliberative process privileges); *Cipollone v. Liggett Grp., Inc.*, 812 F.2d 1400 (table), 1987 WL

[5] As explained above Defendants are seeking mandamus for three of these witnesses in the Fifth Circuit. Further, Defendants intend to move for reconsideration on a separate fourth witness based on new information provided by a non-party that now calls into question the Western Louisiana District Court's basis for authorizing that deposition.

36515, at *2 (4th Cir. 1987) (per curiam) (deliberative process privilege). Plaintiffs have no need to probe such protected matters that could overcome either privilege. Their case concerns *external* communications between the Government and nonparty social-media platforms and hinges specifically on the purported coercive content and effect of such communications in allegedly causing particular episodes of social-media content moderation. Thus, discovery from the social-media platforms themselves is an alternative source of information.

Likewise, the Federal Defendants have offered other, lower-ranking officials for deposition. Given that the original Complaint focused on episodes of social-media content moderation concerning the COVID-19 pandemic and election security, Defendants offered the following witnesses in an effort to resolve any disputes about depositions: (1) at Plaintiffs' option, either Max Lesko, Chief of Staff to the Surgeon General, or Eric Waldo, Senior Advisor and formerly Chief Engagement Officer at the Office of the Surgeon General; (2) at Plaintiffs' option, either Carol Crawford, Chief of the Digital Media Branch of the Division of Public Affairs at the CDC, or Jay Dempsey, Social Media Team Lead, Digital Media Branch, Division of Public Affairs at the CDC; and (3) Geoffrey Hale, Associate Director, Election Security and Resilience, Cybersecurity and Infrastructure Security Agency. *See* Joint Statement at 62. Those officials are the most likely to have knowledge relevant to the information sought through expedited discovery.

In light of that offer and the other unchallenged depositions Plaintiffs are scheduled to take under the Depositions Order, Ms. Psaki's deposition would be plainly unnecessary, and, for that reason, inappropriate. Courts have made clear that "other less burdensome avenues for obtaining the information" must be "exhausted" before authorizing the deposition of a high-ranking official. *Microsoft*, 2014 WL 12544827, at * 2 (citation omitted); *see also Simplex*, 766 F.2d at 587 (noting that no extraordinary circumstances exist where party failed to show information was unavailable

23

"from published reports and available agency documents"). Courts have, moreover, refused to authorize depositions or live testimony of high-ranking officials—both current and former—if "other persons can provide the information sought[.]" *In re Holder*, 197 F.3d at 314; *see also In re Jackson*, 624 F.3d at 1373 (granting writ of mandamus directing district court to allow EPA to substitute Assistant Administrator for EPA Administrator at court hearing); *Galan-Alvarez*, 2015 WL 5602342, at *5 (granting motion to quash subpoena seeking testimony from FDIC Chairperson where FDIC had "made available four other officials, all of whom had greater involvement in the day-to-day progress of the bank's closure"). Further, even if Plaintiffs were able to demonstrate that information from Ms. Psaki is necessary, a deposition of a high-ranking official should not be the first resort. *See Blankenship*, 2020 WL 7234270, at *6 ("exceptional circumstances" are present only if "the evidence the deposition will elicit 'is not available through any alternative source or less burdensome means'" (citation omitted)).

Here, the issuing District Court's cursory analysis authorizing Plaintiffs to seek Ms. Psaki's deposition did not consider the availability of alternative, more direct sources of information, and it did not consider alternative means less burdensome. That analysis therefore cannot support denial of the motion to quash the subpoena now before this Court. Indeed, Ms. Psaki has confirmed in her own motion that a deposition would be "highly disruptive." *See* Decl. of Jen Psaki ¶ 5, ECF No. 5-1.

## IV. This Case Is Not A "Rare" One Warranting Rule 45(f) Transfer To The District In Which The Underlying Litigation Is Pending.

If, in response to this motion, the Plaintiffs seek transfer of this action to the Western District of Louisiana under Rule 45(f), the Court should deny such a transfer. Indeed, Defendants highlighted to the Western Louisiana District Court that "[i]t is foreseeable that authorizing Rule 45 depositions may cause the parties to be consumed in collateral litigation, including in another

court, over motions to quash—all while completing depositions of current parties within the 30-day time period set by the expedited discovery schedule." *See* Joint Statement, ECF No. 86, at 60. "Transfers of subpoena-related motions from the enforcing district to the issuing district can be made if the parties and persons subject to the subpoena consent to the transfer or, absent consent, in 'exceptional circumstances.' The 'exceptional circumstances' standard was selected to ensure that transfer is a rare event." 9A Charles Wright & Arthur Miller, *Federal Practice and Procedure* § 2463.1 (3d ed.). Such "rare" transfer would be inappropriate here for at least two reasons.

*First*, the issuing district has not addressed arguments Ms. Psaki may raise as a nonparty under Rule 45 regarding undue burden. *See Jordan*, 921 F.3d at 194 ("Nonparties faced with civil discovery requests deserve special solicitude."); *see also Watts*, 482 F.3d at 509 (Rule 45 "requires district courts supervising discovery to be generally sensitive to the costs imposed on third parties."). Indeed, the issuing District Court explicitly recognized that Rule 45 proceedings—distinct from the proceedings underlying the Depositions Order—could arise from the Depositions Order. *See* Depositions Order at 5. The issuing District Court itself therefore never applied Rule 45; it decided a different issue under a different legal standard.

*Second*, Ms. Psaki's interest in having this Court, Ms. Psaki's home forum, decide whether she must comply with a subpoena for her testimony or documents is not outweighed by other considerations here. "[A] plaintiff's choice of venue is entitled to substantial weight in determining whether transfer is appropriate." *Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015) (citation omitted). That would mean substantial weight should be given to the venue of where Ms. Psaki is domiciled and the motion to quash is brought. Judicial economy interests do not overcome that "substantial weight," where, as here, the only questions presented arise under federal law, given that "all federal courts are

presumed to be equally knowledgeable regarding matters of federal law," *ComScore, Inc. v. Integral Ad Science, Inc.*, 924 F. Supp. 2d 677, 691-92 (E.D. Va. 2013) (citing, *inter alia*, 15 Wright, Miller, & Cooper, *Federal Practice and Procedure: Jurisdiction* 2d § 3854 at 469(4th ed.)), and where, also, the issuing District Court has not ruled on any motion to dismiss or other dispositive motions, *see* pp. 3-5, *supra*.

### V. Defendants Will Serve Any Appropriate Objections To Plaintiffs' Command For Document Productions From Ms. Psaki Within the 14 Days Provided by Rule 45(d).

The subpoena served on Ms. Psaki includes a command for production of documents. Under Federal Rule of Civil Procedure 45(d)(2)(a), any objections to that command must be served within 14 days of the date the subpoena was served[6]—here, by November 15, 2022. Defendants will assess their equities and respond, if necessary, to the command with any objections by the November 15 deadline. Defendants note, however, that they have already conducted a search of Ms. Psaki's White House e-mails for documents responsive to the same requests included with the Rule 45 subpoena, in response to Plaintiffs' requests for production issued during written discovery in the underlying action. In any event, the Western Louisiana District Court has not authorized additional document discovery. Its Discovery Order required Plaintiffs to serve interrogatories and requests for production of documents by July 18, 2022. Plaintiffs' new command for document productions from Ms. Psaki falls outside the Western Louisiana District Court's deadlines for written discovery. But again, Defendants will raise any and all appropriate objections to the subpoena for documents within the 14-day period provided by Rule 45(d).

---

[6] This is the earlier of the dates between the time specified for compliance, which is December 8. *See* Fed. R. Civ. P. 45(d)(2)(B).

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Quash should be granted, and Plaintiffs should be precluded from deposing the former White House Press Secretary, Jennifer Psaki.

Dated: November 3, 2022                    Respectfully submitted,

                                           BRIAN M. BOYNTON
                                           Principal Deputy Assistant Attorney General

                                           JESSICA D. ABER
                                           United States Attorney

                                           JAMES J. GILLIGAN
                                           Special Litigation Counsel, Federal Programs
                                           Branch

                                           ADAM D. KIRSCHNER (IL Bar No. 6286601)
                                           Senior Trial Counsel
                                           KYLA SNOW (OH Bar No. 96662)
                                           INDRANEEL SUR (D.C. Bar No. 978017)
                                           KUNTAL CHOLERA (D.C. Bar No. 1031523)
                                           Trial Attorneys
                                           U.S. Department of Justice
                                           Civil Division, Federal Programs Branch
                                           1100 L Street, NW
                                           Washington D.C. 20005
                                           Tel: (202) 514-3259
                                           kyla.snow@usdoj.gov

                                            /s/ *Lauren A. Wetzler*
                                           LAUREN A. WETZLER
                                           Chief, Civil Division
                                           Assistant United States Attorney
                                           2100 Jamieson Ave.
                                           Alexandria, VA 22314
                                           Tel: (703) 299-3752
                                           lauren.wetzler@usdoj.gov

                                           ATTORNEYS FOR THE UNITED STATES OF
                                           AMERICA

## CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2022, a copy of the document above was served by email to the following counsel of record for Respondents:

/s/ D. John Sauer
D. John Sauer, Mo. Bar No. 58721*
  Solicitor General
Justin D. Smith, Mo. Bar No. 63253
  First Assistant Attorney General
Todd Scott, Mo. Bar No. 56614*
  Senior Counsel
Michael E. Talent, Mo. Bar No. 73339*
  Deputy Solicitor General
Missouri Attorney General's Office
Post Office Box 899
Jefferson City, MO 65102
Tel: (573) 751-8870
John.Sauer@ago.mo.gov
Counsel for State of Missouri

/s/ Elizabeth B. Murrill
Elizabeth B. Murrill (La #20685)
  Solicitor General
Louisiana Department of Justice
1885 N. Third Street
Baton Rouge, Louisiana 70804
Tel: (225) 326-6766
murrille@ag.louisiana.gov
Counsel for State of Louisiana

A copy of the document was also transmitted via CM/ECF to counsel for Ms. Psaki at the following address:

Edward E. Bagnell, Jr.  (VSB # 74647)
Email:  ebagnell@spottsfain.com
Spotts Fain PC
411 E. Franklin Street, Suite 600
Richmond, VA  23219
Tel. 804 697-2000
Fax: 804 697-2177

A copy of the document was transmitted via email to additional counsel for Ms. Psaki at the following addresses:

29

PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP

Jeannie S. Rhee*
2001 K Street, N.W.
Washington, DC 20006
jrhee@paulweiss.com

David K. Kessler*
Muamera Hadzic*
1285 Avenue of the Americas
New York, NY 10019
dkessler@paulweiss.com
mhadzic@paulweiss.com

Further, a copy of the document above was also transmitted by email to additional counsel for

Respondents at the following addresses:

Jenin Younes, jenin.younes@ncla.legal
John C. Burns, john@burns-law-firm.com

/s/ *Lauren A. Wetzler*
LAUREN A. WETZLER
Chief, Civil Division
Assistant United States Attorney